1   ANDREW M. SPURCHISE, Bar No. 245998
    aspurchise@littler.com
2   JOHN S. HONG, Bar No. 255150
    jhong@littler.com
3   MEL M.C. COLE, Bar No. 293265
    mmcole@littler.com
4   LITTLER MENDELSON, P.C.
    650 California Street
5   20th Floor
    San Francisco, California  94108.2693
6   Telephone:     415.433.1940
    Facsimile:      415.399.8490
7
    Attorneys for Defendant
8   POSTMATES, INC.

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12
    SHERRY SINGER, RYAN WILLIAMS,          Case No.  4:15-cv-01284-JSW
13  RYDER VANDERHEYDEN, STEVEN
    GRANT, and MICHAEL TSAPATSARIS,        **DEFENDANT'S MEMORANDUM OF
14  individually and on behalf of all others   POINTS AND AUTHORITIES IN
    similarly situated,                    SUPPORT OF MOTION TO DISMISS
15                                          COUNTS X AND XI OF PLAINTIFFS'
                        Plaintiffs,         FIRST AMENDED COMPLAINT WITH
16                                          PREJUDICE**
            v.
17                                          **[FRCP 12(B)(6)]**
    POSTMATES, INC.,
18                                          Date:        September 4, 2015
                        Defendant.         Time:        9:00 a.m.
19                                          Location: Courtroom 5, 2nd Floor
20                                          Complaint Filed: March 19, 2015
                                            FAC Filed: May 26, 2015
21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO
DISMISS COUNTS X & XI OF PLTFS' FAC

Case No. 4:15-cv-01284-JSW

1

## TABLE OF CONTENTS

2

PAGE

3   I.      INTRODUCTION ................................................................................................... 1

4   II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................ 1

5   III.    ARGUMENT ........................................................................................................... 2

6           A.    Motion to Dismiss Legal Standard ............................................................. 2

7           B.    The FAAAA Preempts Plaintiffs' Claim Under The Massachusetts
                  Independent Contractor Misclassification Statute ...................................... 3

8
9                 1.    As Alleged By Plaintiffs, The FAAAA Covers Postmates As Either A
                        Motor Carrier Or A Broker ................................................................. 5

10                2.    The FAAAA Preempts Plaintiffs' Claims Under The Massachusetts
                        Independent Contractor Statute ........................................................... 5

11
12          C.    Plaintiffs Failed to Exhaust their Administrative Remedies as to their Section
                  148B Claim .................................................................................................. 9

13          D.    Plaintiffs' Wage Act Claims Must Also Be Dismissed ............................... 9

14          E.    Plaintiffs Cannot Claim Reimbursement Of Business Expenses Under Section
                  148 .............................................................................................................. 10

15    IV.    CONCLUSION ....................................................................................................... 10

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO
DISMISS COUNTS X & XI OF PLTFS' FAC                    i.

1

**TABLE OF AUTHORITIES**

2

PAGE

3

**CASES**

4

*Am. Airlines, Inc. v. Wolens,*
   513 U.S. 219 (1995)...............................................................................................3, 4

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ("*ATA*")..............................................................4, 8

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1988).......................................................................................2

*Bower v. EgyptAir Airlines Co.,*
   731 F.3d 85 (1st Cir. 2013).........................................................................................4

*Brown v. United Airlines, Inc.,*
   720 F.3d 60 (1st Cir. 2013).........................................................................................4

*by Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ("*Twombly*") ............................................................................2

*Cal. Tow Truck Ass'n v. City & County of San Francisco,*
   928 F. Supp. 2d 1157 (N.D. Cal. 2013) .....................................................................4

*Conley v. Gibson,*
   355 U.S. 41 (1957)......................................................................................................2

*DiFiore v. Am. Airlines, Inc.,*
   646 F.3d 81 (1st Cir. 2011)....................................................................................3, 4

*Dilts v. Penske Logistics, LLC,*
   768 F.3d 637 (9th Cir. 2014) ......................................................................................4

*Factors Etc. v. Pro Arts,*
   652 F.2d 278 (2d Cir. 1981)........................................................................................3

*Fraelick v. PerkettPR, Inc.,*
   83 Mass. App. Ct. 698 (2013)...................................................................................10

*Mass. Delivery Ass'n v. Coakley,*
   769 F.3d 11 (1st Cir. 2014)................................................................................3, 4, 6

*Morales v. Trans World Airlines, Inc.,*
   504 U.S. 374 (1992).....................................................................................................4

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2

PAGE

3

*N.H. Motor Transp. Ass'n v. Rowe*,
4        448 F.3d 66 (1st Cir. 2006) ......................................................................3, 4

5     *Northwest, Inc. v. Ginsberg*,
         134 S.Ct. 1422 (2014) ...............................................................................4
6
     *Penske Logistics, LLC v. Dilts*,
7        2015 U.S. LEXIS 2990 (U.S., May 4, 2015) ............................................4

8     *People ex rel. Harris v. Pac Anchor Transp., Inc.*,
         59 Cal.4th 772 (2014) ................................................................................7
9
     *Remington v. J.B. Hunt Transp., Inc.*,
10       2015 U.S. Dist. LEXIS 13825 (D. Mass. Feb. 5, 2015) ...........................8

11    *Rowe v. N.H. Motor Transp. Ass'n*,
         552 U.S. 364 (2007).................................................................................3, 4
12
     *Sacks v. Office of Foreign Assets Ctrl.*,
13       466 F.3d 764 (9th Cir. 2006) .....................................................................2

14    *Sanchez v. Lasership, Inc.*,
         937 F.Supp.2d 730 (E.D. Va. 2013) ...................................................6, 7, 8
15
     *Schwann v. FedEx Ground Package Sys., Inc.*,
16       2015 U.S. Dist. LEXIS 13826 (D. Mass. Feb. 5, 2015) ...........................8

17    *Tobin v. Fed. Express Corp.*,
         --- F.3d 448 (1st Cir. 2014).......................................................................4
18
19    STATUTES

20    49 U.S.C. § 13102..............................................................................................5
21
     49 U.S.C. § 14501 ...................................................................................... passim
22
     Cal. Lab. Code § 2802(a)...............................................................................10
23
     FAAAA........................................................................................................ passim
24
     Massachusetts General Laws chapter 149 section 148 ...............................2, 9
25
     Massachusetts General Laws chapter 151 section 1 ...................................2,9
26
     Massachusetts General Laws chapter 149 section 148B ......................... passim
27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## I.     INTRODUCTION

Defendant Postmates, Inc. ("Postmates") moves to dismiss with prejudice Plaintiffs' claims brought pursuant to the Massachusetts independent contractor misclassification statute (M.G.L. c. 149, § 148B) ("Count X").  In the First Amended Complaint ("FAC"), Plaintiffs allege Postmates is a "delivery service" and that the services Plaintiffs provide are rendered within the "usual course" Postmates' business.[1]  However, the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), a federal statute with an "exceedingly broad" preemptive scope, preempts *any* claim brought pursuant to the Massachusetts independent contractor misclassification statute against a "delivery service," which is exactly what Plaintiffs allege Postmates is.

Specifically, the FAAAA preempts *any* state law that relates to the prices, routes or services of a motor carrier or broker.  Because the Massachusetts independent contractor law, M.G.L. c. 149, § 148B ("Section 148B"), effectively bans the use of independent contractors, it inevitably and significantly affects the prices, routes and services offered by motor carriers or brokers, contrary to the FAAAA, and is therefore preempted.  As a result, Count X must be dismissed with prejudice.

As separate bases for dismissal of Count X of the FAC, the applicable statute does not provide for the reimbursement of business expenses and Plaintiffs failed to exhaust their administrative remedies before bringing Count X before this Court.

Finally, because Count XI of Plaintiffs' FAC for violation of Massachusetts minimum wage law is premised on a violation of the Massachusetts independent contractor misclassification statute, it also fails and must be dismissed.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

According to the FAC, the five named Plaintiffs in this have all been couriers who provided delivery services to customers through the Postmates app.  (FAC ¶¶ 6-10.)  Plaintiffs allege that they, like all couriers providing services located with the Postmates app, were misclassified as independent contractors and should have been treated as employees of Postmates.  (FAC ¶ 21.)

---

[1] Postmates disputes Plaintiffs' characterization of Postmates as a "delivery service," and it preserves all arguments in that regard.  However, this motion is brought based on Plaintiffs' allegations and, as alleged by Plaintiffs, the Massachusetts state law claims asserted in the FAC fail as a matter of law for the reasons described herein.

DEF'S MPA IN SUPPORT OF MOTION TO
DISMISS COUNTS X & XI OF PLTFS' FAC

Case No. 4:15-cv-01284-JSW

Plaintiffs' Complaint describes Postmates as "a San Francisco-based courier service that provides delivery service in cities throughout the country via an on demand dispatch system." (FAC ¶ 17.) The Complaint goes on to state that "Postmates is in the business of providing delivery service to customers." (FAC ¶ 22.)

Plaintiffs bring a variety of wage and hour claims against Postmates, including a nationwide Fair Labor Standards Act collective action (FAC ¶¶ 26-27, 58-59), a California Rule 23 class (FAC ¶¶ 28-26, 60-63), a claim under the Private Attorneys' General Act (FAC ¶¶ 37-39, 64-67), a New York Rule 23 class (FAC ¶¶ 40-48, 68-69), and most importantly for the purposes of this motion, a Massachusetts Rule 23 class based on Massachusetts General Laws chapter 149 section 148B ("Section 148B"), chapter 149, section 148, and chapter 151, section 1. (FAC ¶¶ 49-57.) Section 148B governs the classification of independent contractors in Massachusetts. Mass. Gen. L. ch. 149, § 148B. Chapter 149, section 148 and chapter 151, section 1 provide for various wage claims to employees. Mass. Gen. L. ch. 149, §§ 148, 148B; Mass. Gen. L. ch. 151, § 1.

## III. ARGUMENT

### A. Motion to Dismiss Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims stated in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). *Twombly* made clear that it is not proper to assume that Plaintiffs can prove facts not alleged in the complaint or that the Defendant has violated laws in ways not alleged. 550 U.S. at 563 n.8.

Dismissal of claims is proper where there exists either: (1) a "lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss must be granted when the complaint reveals on its face that a plaintiff fails to state a claim upon which relief can be granted. *Sacks v. Office of Foreign Assets Ctrl.*, 466 F.3d 764, 771 (9th Cir. 2006). Here, the Court must decide whether the facts alleged, if true, would entitle Plaintiffs to some form of legal remedy under Massachusetts state law. *Id.* As described below, Counts X and XI fail to meet this standard, and must be dismissed.

2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     The FAAAA Preempts Plaintiffs' Claim Under The Massachusetts Independent Contractor Misclassification Statute**

The FAAAA forbids any state from "enact[ing] or enforc[ing] a law… related to a price, route or service of any motor carrier." 49 U.S.C. § 14501(c)(1). Congress passed the FAAAA to address the "significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology" costing customers "$5-12 billion" per year. H.R. Conf. Rep. 103-677 (1994), at 87; s*ee Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 369 (2007). In order to "ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality" in the industry (*Rowe*, 552 U.S. at 373), Congress enacted the FAAAA, "in the public interest" and "to facilitate interstate commerce." H.R. Conf. Rep. 103-677, at 87.

"The 'related to' test is purposefully expansive," and "embraces state laws having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly." *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 18 (1st Cir. 2014) ("*MDA II*"; internal citations omitted); *see N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 71-73 (1st Cir. 2006) (*aff'd Rowe*, 552 U.S. 364) ("The Act's drafters chose to express the preemptive scope of the FAAAA in words that they understood to be exceedingly broad").[2] This test "is most sensibly read … to mean states may not seek to impose their own public policies or theories of competition or regulation on the operations" of the defendant. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995).[3] The only laws that escape FAAAA preemption are those "whose effect is only tenuous, remote, or peripheral," such as those governing gambling, prostitution or smoking. *Id*. at 18.

However, state laws which either impact relevant contractual relationships, require businesses to provide service in a particular way, or which directly impact pricing methods are

---

[2] Postmates relies heavily on First Circuit case law in its papers because it seeks to dismiss a Massachusetts state law claim before this Court, and this issue has been squarely addressed by the First Circuit. *See Factors Etc. v. Pro Arts*, 652 F.2d 278, 283 (2d Cir. 1981) (deferring to Sixth Circuit interpretation of Tennessee law). As the Court may suspect, the question of whether the FAAAA preempts Massachusetts state law Section 148B appears to be one of first impression in the Ninth Circuit. However, as explained below, even under Ninth Circuit case law interpreting FAAAA's preemptive effect, the result required here is clear.

[3] Congress intentionally duplicated the preemption provisions of the Airline Deregulation Act of 1978 (the "ADA"), and thus "courts have construed the two statutes [the ADA and FAAAA] *in pari materia* and have cited precedents concerning either act interchangeably." *DiFiore v. Am. Airlines, Inc*., 646 F.3d 81, 86 n.4 (1st Cir. 2011); *see Rowe*, 552 U.S. at 372 (same); *MDA II*, 769 F.3d at 17 (same).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC          3.          Case No. 4:15-cv-01284-JSW

1  plainly preempted.  *Dilts v. Penske Logistics, LLC*,  768 F.3d 637, 645-46 (9th Cir. 2014) (*certiori*

2  *denied* by *Penske Logistics, LLC v. Dilts*, 2015 U.S. LEXIS 2990 (U.S., May 4, 2015) ("*Dilts*").  As

3  stated by the Ninth Circuit in *Dilts*, "laws are more likely to be preempted when they operate at the

4  point where carriers provide services to customers at specific prices." *Id*. at 646.   The laws cannot

5  "mandat[e] motor carriers' use (or non-use) of particular prices, routes, or services," nor can they

6  "regulate a significant aspect of the motor carrier's package pickup and delivery service." *Id*. at 645;

7  *citing Rowe*, 552 U.S. at 373.

8  Exemplifying the breadth of this "sweeping test" is the range of laws held to be

9  preempted, such as those for city permitting requirements (*Cal. Tow Truck Ass'n v. City & County of*

10  *San Francisco*, 928 F. Supp. 2d 1157 (N.D. Cal. 2013); the implied covenant of good faith and fair

11  dealing (*Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422 (2014)); invasion of privacy and infliction of

12  emotional distress (*Tobin v. Fed. Express Corp.*, --- F.3d 448 (1st Cir. 2014)); for negligence (*Bower*

13  *v. EgyptAir Airlines Co.*, 731 F.3d 85 (1st Cir. 2013)); unjust enrichment (*Brown v. United Airlines,*

14  *Inc.*, 720 F.3d 60 (1st Cir. 2013)); and the Massachusetts tips statute (*DiFiore v. Am. Airlines, Inc.*,

15  646 F.3d 81 (1st Cir. 2011)).[4]

16  What is more, FAAAA cases do "not require[] the presentation of empirical

17  evidence," making this issue an appropriate subject for a motion to dismiss.  *See N.H. Motor Transp.*

18  *Ass'n*, 448 F.3d at 82 n.14.  Courts "look to the logical effect that a particular scheme has on the

19  delivery of services or the setting of rates."  *MDA II*, 769 F.3d at 21.  This "logical effect can be

20  sufficient even if indirect."  *Id*.  And a motor carrier or broker need not show this logical effect to

21  any degree of certainty; rather, preemption can be found based on a state law's "*potential* impact on

22  carriers' prices, routes, and services."  *Id*. (emphasis added).   Accordingly, courts have found

23  preemption based on the pleadings, alone.  *See, e.g.*, *Ginsberg*, 134 S.Ct. at 1427, 1433 (agreeing

24  with district court's Rule 12(b)(6) dismissal on preemption grounds); *Am. Trucking Ass'ns, Inc. v.*

25

26

---

27  [4]  *See also Rowe*, 552 U.S. 364 (Maine cigarette delivery law was sufficiently related to prices, routes or services);

28  *Wolens*, 513 U.S. 219 (consumer protection law); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (advertising regulations).

DEF'S MPA IN SUPPORT OF MOTION TO
DISMISS COUNTS X & XI OF PLTFS' FAC                  4.                          Case No. 4:15-cv-01284-JSW

*City of Los Angeles*, 559 F.3d 1046, 1056 (9th Cir. 2009) ("*ATA*") (reversing district court decision and finding basis in pleadings for preliminary injunction based on FAAAA preemption).

### 1.   As Alleged By Plaintiffs, The FAAAA Covers Postmates As Either A Motor Carrier Or A Broker

The FAAAA mandates the preemption of state laws "related to a price, route, or service of any motor carrier... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation" and a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2), (14). Plaintiffs' Complaint – which must be taken as alleged for the purpose of this motion – describes Postmates as "a San Francisco-based courier service that provides delivery service in cities throughout the country via an on demand dispatch system" that is "in the business of providing delivery service to customers." (FAC ¶¶ 17, 22.)

Plaintiffs' description of Postmates clearly meets the definition of a motor carrier or of a broker under the FAAAA. If Postmates itself is "provid[ing] delivery services" through the use of motorized vehicles (and Plaintiffs allege the used fuel-powered vehicles in their deliveries (FAC ¶¶ 6, 23)) then the entity provides motor vehicle transportation for compensation. If Postmates conducts its business solely through its "on demand dispatch system" then at a minimum the company is a "broker" because it "arrang[es] for transportation by motor carrier for compensation." 49 U.S.C. § 13102(14). Although key to this litigation will be the debate between the parties as to the nature of Postmates' business, for the purposes of this motion, the Complaint alleges facts consistent with either the "motor carrier" or "broker" label.

### 2.   The FAAAA Preempts Plaintiffs' Claims Under The Massachusetts Independent Contractor Statute

Given the "exceedingly broad" preemptive impact of the FAAAA, Plaintiffs' allegations that they were misclassified as independent contractors under the Massachusetts independent contractor law are preempted because the law prohibits a broker or motor carrier (which

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC    5.    Case No. 4:15-cv-01284-JSW

Plaintiffs' allege Postmates is) from engaging individuals as independent contractors in all situations where the work performed by the independent contractors is not "performed outside the usual course of the business of the employer." The inevitable effect of this independent contractor ban is to change the way (a) motor carriers and brokers do business, (b) structure their contractual relationship with both customers and workers, and (c) structure their pricing models. This is precisely the effect the FAAAA was intended to prevent.

### a. Accepting Plaintiffs' Allegations As True, Section 148B Bans Postmates From Using Independent Contractors

The Massachusetts independent contractor statute uses a three-pronged, conjunctive test. To be an independent contractor, one needs to: (A) "be free from control and direction" in how one performs services for the principal; (B) perform services "outside the usual course of the business for which the service is performed;" *and* (C) be "customarily engaged in an independently established occupation, profession or business." M.G.L. c. 149, § 148B(a). The "B Prong" is stringent: one must "perform[] services that are part of an independent, separate, and distinct business from that of the employer" to be an independent contractor. Advisory From The Attorney General's Fair Labor Division On M.G.L. c. 149, s. 148B, 2008/1, at 3. This requirement is "unlike any other statute in the country," as "other independent contractor statutes only account for an employer's usual course of business as one of many factors, if at all, in determining independent contractor status." *Sanchez v. Lasership, Inc*., 937 F.Supp.2d 730, 741 (E.D. Va. 2013).

According to the First Circuit, "There can be no dispute that [couriers] act in the course of business" for brokers or motor carriers, "even if one performs the deliveries and the other arranges the deliveries." *MDA II*, 769 F.3d at 21 n.4. Here, the allegations in the FAC, accepted for the purpose of this motion, confirm that Plaintiffs believe they were acting within the course of Postmates' business: "Postmates is in the business of providing delivery service to customers, and that is the service that Postmates couriers provide." (Complaint ¶ 22.) If true, Postmates likely cannot satisfy the B Prong with independent contractor couriers. Because all three prongs must be met for an individual to be an independent contractor, this statute requires that couriers providing a delivery service on behalf of a principal must be classified as employees, which thereby bans the use

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC          6.          Case No. 4:15-cv-01284-JSW

of independent contractors by said principal (here, Postmates). *See id*. In this light, the effect of Section 148B, "is to bind [businesses] to utilize a certain type of employment relationship to carry out their operations" – namely, the use of employees rather than independent contractors. *See Sanchez*, 973 F.Supp.2d at 741. Further, Section 148B directly impacts pricing, because, as the FAC alleges, Plaintiffs receive a fee for each delivery requested by customers, and therefore this state law necessarily seeks to disrupt the contractual arrangement between the couriers, Postmates and the customers. (FAC ¶ 20); *Id*. at 646 (quoting *Ginsberg*, 134 S. Ct. at 1433 ("Because the state law claim sought to enlarge the contractual relationship that the carrier and its customer had voluntarily undertaken, [it] was preempted under the Airline Deregulation Act.")

### b. Section 148B's Ban On Independent Contractors Is Preempted Because It Impermissibly Affects Postmates' Prices Or Services

Section 148B directly conflicts with the FAAAA and its purpose as the legislative history makes clear. In fact, the federal government sought to preempt a less stringent independent contractor law than the one at issue here when it created the FAAAA. Specifically, in drafting the bill, "Congress disapproved of a California law that denied advantageous regulatory exemptions to motor carriers who used a large proportion of independent contractors." *People ex rel. Harris v. Pac Anchor Transp., Inc*., 59 Cal.4th 772, 787 (2014); *see* H.R. Conf. Rep. 103-677, at 86. Congress singled out this law as being one for which federal preemption would be "in the public interest as well as necessary to facilitate interstate commerce." H.R. Conf. Rep. 103-677, at 86. If a state statute that only "denied advantageous regulatory exemptions" for the use of independent contractors is preempted, then surely a ban on independent contractors, such as Section 148B, is preempted as well. *See id.*

Faced with similar state laws, numerous courts have held bans on independent contractors to be FAAAA-preempted. For example, the District Court in *Sanchez* held that Section 148B was preempted as to same-day delivery company couriers. The court there recognized that "compliance with Massachusetts's independent contractor law fundamentally alters the essence of [a carrier's] business model" and works a "complete overhaul of a motor carrier's business model" – a business model "that relies on independent contractors." *Sanchez*, 937 F.Supp.2d at 743. Such a

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO
DISMISS COUNTS X & XI OF PLTFS' FAC

7.

Case No. 4:15-cv-01284-JSW

massive shift "is disruptive to the carriage itself and [therefore] falls within the scope of conduct the FAAAA was intended to prevent." *Sanchez*, 937 F.Supp.2d at 743. The *Sanchez* court therefore dismissed the plaintiff's Section 148B claim. *See also Remington v. J.B. Hunt Transp., Inc.,* 2015 U.S. Dist. LEXIS 13825 (D. Mass. Feb. 5, 2015); *Schwann v. FedEx Ground Package Sys., Inc.*, 2015 U.S. Dist. LEXIS 13826 *4 (D. Mass. Feb. 5, 2015) ("the application of section 148B to FedEx and other similar motor carriers would unquestionably have an impact on 'price, route[s], [and] services' by in effect proscribing the carrier's preferred business model.")

Likewise, the Ninth Circuit held the FAAAA *per se* preempted a comparable ban on independent contractors. *ATA*, 559 F.3d 1046. There, the Port of Los Angeles sought to phase out the use of independent contractors by certain motor carriers. The Ninth Circuit found that under this phase-out, "neither motor carriers nor their customers (the enormous interstate and foreign shipping industry) would be able to select those with whom they would choose to contract;" rather, "desires for alleged efficiency, not the marketplace, would decide those questions." *Id.* at 1056. This "rather blatant attempt to decide who can use whom for drayage services" was "a palpable interference with prices and services," and therefore preempted. *Id.* So too here. Section 148B decides "who can use whom" for brokering services – employees, not independent contractors – and is an equally "palpable interference with prices and services."

### c.   Section 148B Destroys The Role Of The Broker Under The FAAAA

Lastly, the very definition of "broker" under the FAAAA envisions the use of independent contractors, making the Massachusetts ban on such a relationship a direct contradiction to the federal statute. Specifically, a broker is "a person, o*ther than a motor carrier or an employee or agent of a motor carrier*, that [arranges for transportation by motor carrier] *as a principal or agent*." 49 U.S. Code § 13102(2) (emphasis added).  As evidenced, the broker is an entirely separate category from the motor carrier under the FAAAA, one which cannot exist in Massachusetts under Section 148B.

By its very definition, a broker uses independent contractors, as it serves as their principal. Further, those independent contractors are part of the broker's "usual course of business,"

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC      8.      Case No. 4:15-cv-01284-JSW

as they are the services the broker is arranging.  As the Section 148B B Prong prohibits the use of independent contractors in "the usual course of the business for which the service is performed" it is impossible for a broker to operate – or even exist – in Massachusetts under Section 148B.  If brokers had to employ their independent contractors, then they would no longer be brokers, but motor carriers themselves.  Section 148B completely nullifies an entire category of protected people and entities under the FAAAA.  For a state to codify the definition of independent contractor in such a way that an entity cannot serve as an individual's principal destroys the entire purpose of including brokers under the protection of the FAAAA.

**C.     Plaintiffs Failed to Exhaust their Administrative Remedies as to their Section 148B Claim**

Although Plaintiffs' claim under Section 148B fails because it is preempted, as explained above, it also fails because Plaintiffs have failed to exhaust their administrative remedies under Massachusetts law chapter 149, section 150.  The law requires that Plaintiffs bring their claim before the State Attorney General, before filing a civil action for "any damages incurred, and for any lost wages and other benefits."  Mass. Gen. L. ch. 149, § 150.  Plaintiffs have pled no facts to show that they have met this requirement, and as all of their Massachusetts state law claims are premised on a violation of Section 148B, all these claims fail.

**D.     Plaintiffs' Wage Act Claims Must Also Be Dismissed**

Plaintiffs' substantive claims under the Massachusetts Wage Act (Counts X and XI) rely upon their allegation that they were misclassified as independent contractors.  Thus, because Plaintiffs' misclassification claim fails, their substantive claims fail.

Besides Section 148B, Plaintiffs also claim that Postmates violated Massachusetts General Laws chapter 149 section 148, and chapter 151 section 1.   Both of these sections only apply to the employment relationship.  Mass. Gen. L. ch. 149, § 148 ("Every person having *employees* in his service shall pay weekly or bi-weekly each such *employee* the wages earned by him to within six days of the termination of the pay period during which the wages were earned.)" (Emphasis added); Mass. Gen. L. ch. 151, § 1 ("It is hereby declared to be against public policy for any *employer* to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC     9.     Case No. 4:15-cv-01284-JSW

*employ* any person in an occupation in this commonwealth at an oppressive and unreasonable wage.") (Emphasis added).

Therefore, if Plaintiffs' cannot rightly bring their claim that they are misclassified as independent contractors – and therefore Postmates' employees – before this Court, then they have failed to state a claim as to their derivative claims under the Wage Act.

### E. Plaintiffs Cannot Claim Reimbursement Of Business Expenses Under Section 148

In Count X, Plaintiffs allege that they "have improperly been required to bear the expenses of their employment (such as expenses for car or bike maintenance, gas, phone data charges, external phone batteries, gear for transporting goods, and other expenses) in violation of Mass. Gen. L. c. 149 § 148." However, unlike California law, Section 148 does not include any language entitling an employee to business expenses. *Cf.* Cal. Lab. Code § 2802(a) ("[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]")

Further, at least one Massachusetts court has rejected a claim for business expenses under Section 148: "the violation of a standard expense reimbursement arrangement would not constitute a violation of the Wage Act because the reimbursement is not compensation 'earned' by 'labor, service or performance.'" *Fraelick v. PerkettPR, Inc.*, 83 Mass. App. Ct. 698, 706 (2013). Accordingly, Plaintiffs are not entitled to recover for expenses incurred in providing delivery, even if their independent contractor misclassification were not preempted by federal law.

## IV. CONCLUSION

For the foregoing reasons, Postmates respectfully requests that the court grant its motion to dismiss Plaintiffs' Massachusetts law claims with prejudice.

Dated: June 29, 2015

*/s/ Mel M.C. Cole*
ANDREW M. SPURCHISE
MEL M.C. COLE
LITTLER MENDELSON, P.C.
Attorneys for Defendant,
POSTMATES, INC.

Firmwide:134268507.6 078219.1003

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MPA IN SUPPORT OF MOTION TO DISMISS COUNTS X & XI OF PLTFS' FAC

10.

Case No. 4:15-cv-01284-JSW