1    ANDREW M. SPURCHISE, Bar No. 245998
     aspurchise@littler.com
2    JOHN S. HONG, Bar No. 255150
     jhong@littler.com
3    MEL M.C. COLE, Bar No. 293265
     mmcole@littler.com
4    LITTLER MENDELSON, P.C.
     650 California Street
5    20th Floor
     San Francisco, California  94108.2693
6    Telephone:     415.433.1940
     Facsimile:     415.399.8490
7
     Attorneys for Defendant
8    POSTMATES, INC.

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   SHERRY SINGER, RYAN WILLIAMS,        Case No.  4:15-cv-01284-JSW
     RYDER VANDERHEYDEN, STEVEN
14   GRANT, and MICHAEL TSAPATSARIS,      **DEFENDANT POSTMATES, INC.'S**
     individually and on behalf of all others   **MEMORANDUM OF POINTS AND**
15   similarly situated,                  **AUTHORITIES IN OPPOSITION TO**
                                          **PLAINTIFFS' MOTION FOR 29 U.S.C.**
16                  Plaintiffs,           **§ 216(b) NOTICE, AND REQUEST TO**
                                          **STAY PROCEEDINGS IN THE**
17          v.                            **ALTERNATIVE**

18   POSTMATES, INC.,                     Date:          September 25, 2015
                                          Time:          9:00 a.m.
19                  Defendant.            Courtroom:  5

20                                        Complaint Filed: March 19, 2015
                                          FAC Filed: May 26, 2015
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND.............................................................................. 2

   A.   Postmates, Inc. .......................................................................................... 2

   B.   Data Generated Through The App............................................................. 4

III.  CONDITIONAL CERTIFICATION IS INAPPROPRIATE ............................. 5

   A.   Applicable Legal Standard: Conditional Certification .............................. 5

   B.   Applicable Legal Standard: Independent Contractor Status...................... 7

   C.   Plaintiffs' Motion For Conditional Certification Fails Because Plaintiffs Have Not Demonstrated They Are Similarly Situated To Other Members Of The Proposed Collective With Respect To A Common, Unlawful Practice ................................ 7

      1.   Plaintiffs' Reliance Upon The Mere Classification Of Couriers As Independent Contractors Is Insufficient To Establish A Common Theory Of Liability ........................... 7

         a.   Couriers Bear The Hallmarks Of Independent Contractors ................................. 9

      2.   Plaintiffs Cannot Demonstrate They Are Similarly Situated To Members Of The Collective Because No Single Courier Operates In The Same Way ................................. 10

      3.   Plaintiffs' Claims Necessarily Require Individualized Determinations, Rendering Conditional Certification Inappropriate ........................... 12

      4.   Even Assuming The Couriers Were Misclassified, Plaintiffs Have Failed To Propose A Sufficiently Plausible Common Theory Of Liability......................... 14

   D.   Plaintiffs' Request For Production Must Be Denied ................................ 15

   E.   Plaintiffs' Proposed Notice Procedures Are Inappropriate...................... 16

   F.   Plaintiffs' Proposed Notice And Consent Form Should Be Rejected....... 17

   G.   If The Court Is Otherwise Inclined To Grant Plaintiffs' Motion, All Proceedings Should Be Stayed Pending The Supreme Court's Decision In *Bouaphakeo* ......... 18

      1.   Legal Standard................................................................................ 18

      2.   The *Bouaphakeo* Decision ........................................................... 18

      3.   A Stay Is Warranted Here .............................................................. 19

      4.   Several Courts Have Granted Stays Pending the *Bouaphakeo* Decision ............................ 20

IV.   CONCLUSION................................................................................................. 20

i.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Inter-Con Sec. Sys., Inc.*,
   242 F.R.D. 530 (N.D. Cal. 2007) ........................................................................ 6, 17

*Aguilar v. Complete Landsculpture, Inc.*,
   2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) ............................................................ 16

*Andel v. Patterson-UTI Drilling Co. LLC*,
   280 F.R.D. 287 (S.D. Tex. 2011) .............................................................................. 8

*Bamgbose v. Delta-T Group, Inc.*,
   684 F. Supp. 2d 660 (E.D. Pa. 2010) ......................................................................... 8

*Barnett v. Countrywide Credit Indus.*,
   No. CIV.A. 3:01-CV-1182-M, 2002 WL 1023161 (N.D. Tex. May 21, 2002) ............ 17

*Beetler v. Trans-Foam, Inc.*,
   2011 WL 6130805 (N.D. Ohio Dec. 8, 2011) ........................................................... 17

*Bibo v. Fed. Express, Inc.*,
   2009 U.S. Dist. LEXIS 37597 (N.D. Cal. Apr. 21, 2009) .......................................... 20

*Bouaphakeo v. Tyson Foods, Inc.*,
   765 F.3d 791 (8th Cir. 2014), *cert. granted*, 2015 WL 1285369 (June 8, 2015) .................... passim

*Bouthner v. Cleveland Constr., Inc.*,
   2012 U.S. Dist. LEXIS 28497 (D. Md. Mar. 5, 2012) ................................................ 12

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal. 4th 1004 (2012) .......................................................................................... 20

*Brooks v. BellSouth Telecomms. Inc.*,
   164 F.R.D. 561 (N.D. Ala. 1995) .............................................................................. 16

*Buckland v. Maxim Healthcare Servs.*,
   2012 U.S. Dist. LEXIS 122281 (C.D. Cal. Aug. 27, 2012) ........................................... 6

*Clark v. United States*,
   624 F.3d 3 (2d Cir. 1980) ........................................................................................ 19

*Clausman v. Nortel Networks, Inc.*,
   2003 U.S. Dist. LEXIS 11501 (S.D. Ind. 2003) .......................................................... 6

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

*CMAX, Inc. v. Hall,*
   300 F.2d 265 (9th Cir. 1962) ........................................................................... 18

*Colson v. Avnet, Inc.,*
   687 F. Supp. 2d 914 (D. Ariz. 2010) ........................................................... 6, 8

*Daniels v. Aeropostale West, Inc.,*
   2013 U.S. Dist. LEXIS 59514 (N.D. Cal., April 24, 2013) ........................... 16

*Delgado v. Ortho-McNeil, Inc.,*
   2007 U.S. Dist. LEXIS 74731 (C.D. Cal., Aug. 6, 2007)......................... 16, 17

*Demauro v. Limo, Inc.,*
   2011 U.S. Dist. LEXIS 1229 (M.D. Fla. Jan. 3, 2011) .............................. 7, 13

*Donovan v. Sureway Cleaners,*
   656 F.2d 1368 (9th Cir. 1981) ......................................................................... 7

*England v. New Century Fin. Corp.,*
   370 F. Supp.2d 504 (M.D.La. 2005)............................................................... 12

*Espenscheid v. DirectSat USA, LLC,*
   705 F.3d 770 (7th Cir. Wis. 2013) ................................................................... 6

*Flores v. Velocity Exp., Inc.,*
   2013 WL 2468362 (N.D. Cal. 2013) .............................................................. 10

*Garcia v. United States,*
   No. 09 Civ. 9278 (GEL), 2009 U.S. Dist. LEXIS 118836 (S.D.N.Y. Dec. 21, 2009) ................... 19

*Gillian v. Starjem Rest. Corp.,*
   2011 U.S. Dist. LEXIS 115833 (S.D.N.Y. Oct. 4, 2011) ............................... 13

*Gong-Chun v. Aetna, Inc.,*
   2010 U.S. Dist. LEXIS 56938 (E.D. Cal. May 17, 2010)............................... 20

*Harrison v. McDonald's Corp.,*
   411 F. Supp. 2d 862 (S.D. Ohio 2005) ..................................................... 13, 15

*Hipp v. Liberty Nat'l Life Ins. Co.,*
   164 F.R.D. 574 (M.D. Fla. 1996)................................................................... 17

*Hoffman-LaRoche Inc. v. Sperling,*
   493 U.S. 165 (1989) ............................................................................. 5, 6, 12

*Horne v. United Servs. Auto. Ass'n,*
   279 F. Supp. 2d 1231 (M.D. Ala. 2003) ...................................................... 5, 6

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

*Humphries v. Stream Int'l,*
No. 3:03-CV-1682-D (N.D. Tex. Feb. 13, 2004) ........................................................ 16

*In Re Polyurethane Antitrust Litigation,*
No. 1:10md2196 (N.D. Ohio Aug. 4, 2015) ............................................................... 21

*In re Wells Fargo,*
571 F.3d 953 (9th Cir. 2009) ...................................................................................... 8

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936) ................................................................................................... 18

*Larson v. Trans Union, LLC,*
2015 WL 3945052 (N.D. Cal. June 26, 2015) ........................................................... 21

*Lew v. Countrywide Financial Corp.,*
2009 U.S. Dist. LEXIS 56191 (N.D. Cal. Feb. 24, 2009) .......................................... 20

*Lugo v. Farmer's Pride Inc.,*
737 F. Supp. 2d 291 (E.D. Pa. 2010) ......................................................................... 12

*Luque v. AT&T Corp,*
2010 U.S. Dist. LEXIS 126545 (N.D. Cal., Nov. 19, 2010) (Breyer, J.) ................... 17

*Mackenzie v. Kindred Hosps. E.,*
276 F. Supp. 2d 1211 (M.D. Fl. 2003) ....................................................................... 16

*Marsh v. Butler County School System,*
242 F.Supp.2d 1086 (M.D. Ala. 2003) ..................................................................... 8, 15

*Minor v. FedEx,*
2009 U.S. Dist. LEXIS 62884 (N.D. Cal. July 6, 2009) ............................................. 20

*O'Brien v. Ed Donnelly Enterprises, Inc.,*
575 F.3d 567 (6th Cir. 2009) ...................................................................................... 6

*Ortega v. J.B. Hunt Transp. Inc.,*
258 F.R.D. 361 (C.D. Cal. 2009) ................................................................................ 20

*Pelz v. Abercrombie and Fitch Inc.,*
Case No. 14-6327 (C.D. Cal. July 27, 2015) ............................................................. 20

*Pennington v. Integrity Communs., LLC,*
2013 U.S. Dist. LEXIS 11565 (E.D. Mo. Jan. 29, 2013) ........................................... 8

*Perrin v. Papa John's,*
2015 U.S. Dist. LEXIS 79543 (E.D. Mo. June 19, 2015) ........................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

*Pfaahler v. Consultants for Architects, Inc.*,
   2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 8, 2000) ................................................. 7, 13

*Ray v. Motel 6 Operating, Ltd. P'ship*,
   1996 WL 938231 (D.Minn. Mar. 18 1996) ...................................................................... 13

*Real v. Driscoll Strawberry Assocs., Inc.*,
   603 F.2d 748 (9th Cir. 1979) ............................................................................................ 7

*Robinson v. Ryla Teleservices, Inc.*,
   2011 WL 6667338 (S.D. Ala. Dec. 21, 2011) ................................................................. 17

*Russell v. Wells Fargo & Co.*,
   2008 U.S. Dist. LEXIS 78771 (N.D. Cal. Sept. 3, 2008) ............................................... 17

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) .......................................................................................................... 7

*Severtson v. Phillips Beverage Co.*,
   137 F.R.D. 264 (D. Minn. 1991) ...................................................................................... 12

*Sharpe v. APAC Customer Servs.*,
   No. 09-cv-329, 2010 WL 1292154 (W.D. Wis. Mar. 29, 2010) ...................................... 17

*Sheffield v. Orius Corp.*,
   211 F.R.D. 411 (D. Or. 2002) .......................................................................................... 12

*Sotelo v. MediaNews Group*,
   207 Cal. App. 4th 639 (2012) .......................................................................................... 15

*Spellman v. American Eagle Express, Inc.*,
   2013 U.S. Dist. LEXIS 35032 (E.D. Penn. 2013) ..................................................... 12, 13

*Thomas v. Avis Budget Group LLC*,
   2009 U.S. Dist. LEXIS 83442 (C.D. Cal. Aug. 26, 2009) .............................................. 20

*Thompson v. Speedway SuperAmerica LLC*,
   2009 U.S. Dist. LEXIS 3816 (D. Minn., Jan. 20, 2009) ................................................. 15

*Trinh v. JP Morgan Chase & Co.*,
   2008 U.S. Dist. LEXIS 33016 (S.D. Cal. 2008) ........................................................... 6, 8

*Vinole v. Countrywide Home Loans*,
   571 F.3d 935 (9th Cir. 2009) ............................................................................................. 8

*West v. Border Foods, Inc.*,
   2006 WL 1892527 (D. Minn., July 10, 2006) ................................................................. 15

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO          v.                    Case No. 4:15-cv-01284-JSW
STAY PROCEEDINGS IN THE ALTERNATIVE

*Wisconsin Bell Inc. v. TCG Milwaukee, Inc.*,
   301 F. Supp. 2d 893 (W.D. Wisc. 2002)........................................................................ 19

**<u>Statutes</u>**

29 U.S. Code section 216(b) ................................................................................... 6, 8

Federal Rule of Civil Procedure Rule 23 .................................................................. 6

Federal Rule of Civil Procedure Rule 23(b)(3).......................................................... 19

Federal Rule of Civil Procedure Rule 26(c) .............................................................. 16

Fair Labor Standards Act ................................................................................. passim

1    **I.    INTRODUCTION**

2        Plaintiffs Sherry Singer, Ryan Williams, Ryder Vanderheyden, Steven Grant, and Michael

3    Tsapatsaris (collectively, "Plaintiffs") move to conditionally certify a nationwide collective action

4    under the Fair Labor Standards Act ("FLSA") and send notice to approximately 37,170 delivery

5    providers ("couriers") relying on little more than the bare contention that Defendant Postmates, Inc.

6    ("Postmates") allegedly misclassified them as independent contractors.

7        Given Plaintiffs' minimal evidentiary showing in their moving papers, Plaintiffs apparently

8    assume their request will be met with "rubber-stamp" approval.  However, the "lenient" evidentiary

9    standard some courts apply to determine conditional certification does not mean ***the complete***

10   ***absence*** of an evidentiary standard.  In order to avail themselves of the collective action mechanism

11   of the FLSA, Plaintiffs must first make at least some showing establishing that they are ***similarly***

12   ***situated*** to the collective with respect to a ***common, unlawful practice***.  Plaintiffs fall far short of

13   meeting even this lower standard.

14       Plaintiffs incorrectly assume, ignoring well-established precedent, that the mere classification

15   of a group of individuals as independent contractors is sufficient, on its own, to justify collective

16   treatment.  Indeed, all nine of the attorney-drafted "cut and paste" declarations submitted by

17   Plaintiffs are devoid of probative evidence suggesting that Plaintiffs – or any of the 37,170 members

18   of the proposed conditional collective – were ***actually*** misclassified under the applicable multi-factor

19   legal standard.

20       In contrast, as demonstrated by Postmates' evidence, there is substantial variance with

21   respect to the manner in which couriers operate their businesses, and there are couriers that

22   unquestionably bear the hallmarks of bona fide independent contractors.  Plaintiffs have therefore

23   failed to establish they are sufficiently similarly situated to all couriers to warrant conditional

24   certification, particularly given the multi-factor and highly individualized nature of the legal

25   standard for determining independent contractor status.

26       Further, even assuming Plaintiffs did offer a viable theory of misclassification, conditional

27   certification would ***still*** be improper.  Data generated through the app demonstrates that an

28   overwhelming majority of the putative collective has neither worked in excess of 40 hours in any

1 | given week, nor earned less than federal minimum wage for all "hours worked," thereby precluding

2 | Plaintiffs' from demonstrating an injury under the FLSA.

3 | Accordingly, Plaintiffs have failed to propose a sufficiently plausible common theory of

4 | liability upon which conditional certification of a class of *all* couriers could be granted, separate and

5 | apart from whether Plaintiffs can prove they were misclassified as independent contractors.

6 | Therefore, Plaintiffs' motion must be denied. If the Court is otherwise inclined to

7 | conditionally certify a class, all proceedings should be stayed pending the Supreme Court's decision

8 | in *Bouaphakeo v. Tyson Foods, Inc*., which will address whether a class or collective action can be

9 | maintained where, as here, a class includes hundreds of individuals who suffered no injury and thus

10 | have no legal right to damages.

11 | **II.    FACTUAL BACKGROUND**

12 | **A.    Postmates, Inc.**

13 | Postmates is a San Francisco-based technology company that connects those in need of

14 | delivery services with independent, third-party delivery providers using an innovative technology

15 | platform. The platform can be accessed through an app available for download on smartphones or

16 | the Postmates website. The app and website enable customers to quickly and conveniently arrange

17 | for the delivery of items from local restaurants, stores, etc., simply by placing an order

18 | electronically. (Declaration of Kristin Schaefer in Support of Defendant's Opposition to Plaintiffs'

19 | Motion for 29 U.S.C. § 216(b) Notice, and Request to Stay Proceedings in the Alternative

20 | ("Schaefer Decl."), ¶ 2.)

21 | Postmates does not perform any delivery services itself, but rather offers the app as a tool to

22 | facilitate those services to occur upon request. Postmates does not own, lease or operate any

23 | delivery vehicles or bicycles, and does not employ any couriers to complete deliveries. (Schaefer

24 | Decl., ¶ 3.) Postmates does not, and has no ability to, arrange any deliveries outside of the app. (*Id.*)

25 | Upon registering to use the app, every courier signs a "Postmates Independent Contractor

26 | Acknowledgement" agreement, which asks that the signatory recognize his or her status as an

27 | independent contractor, as well as that they are responsible for their expenses, and for personally

28 | determining route choices, schedule, and attire. (*Id.* at ¶ 4, Exh. A.) By using the platform, the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

2.

Case No. 4:15-cv-01284-JSW

1    couriers also agree to Postmates' "Terms & Conditions," which include an express arbitration

2    provision and class and collective action waiver.[1]  (*Id.* at ¶ 4, Exh. B.)

3          Once an order is placed, the delivery is offered to certain couriers signed on to the app,

4    depending on their location and operational capabilities.  (*Id.* at ¶ 5.)  When a courier wants to access

5    delivery requests through the app, she "logs on" to the app, at which point she is in "on-duty" status.

6    However, couriers who are logged in are not limited from engaging in other pursuits, whether they

7    be personal or professional.  Once logged on, she can receive delivery requests, which she can either

8    accept, reject, or ignore.  To accept or reject, she pushes a button, but to ignore, she merely waits for

9    the request to go out to another courier.  Once the request reaches another courier who accepts the

10   request, it disappears from the original courier's phone, officially "ignored."  If the courier accepts

11   the request, then during the time she is picking-up and delivering the item(s) to the customer, she is

12   "on-delivery."  (*Id.* at ¶ 6.)

13         Couriers have sole and complete discretion as to when to use the app.  Postmates does not

14   require that couriers sign-on or off the app at any time, or otherwise make themselves available to

15   complete deliveries, at any particular time or on any particular day.  So long as couriers log on to the

16   app at least once every 30 days to remain "active" on the system, these decisions are left entirely to

17   the couriers' discretion.  (*Id.* at ¶ 7.)  Further, Postmates does not require that a courier accept any

18   minimum number of delivery requests.  In fact, the average acceptance rate of couriers across the

19   nation is 30%, meaning they reject or ignore 70% of the requests sent to them.  Couriers who elect to

20   make themselves available to receive delivery opportunities in advance receive priority status with

21   respect to deliveries available during those time periods.  (*Id.*)

22         Given customers' diverse needs, couriers can deliver various types of products, including

23   food, groceries, and even furniture.  Postmates generally offers delivery opportunities to couriers to

24   match their operational capabilities.  For example, deliveries involving the transport of large goods,

25

26   _____

     [1] The arbitration provision provides, in relevant part, as follows: "You and the Company agree that
27   any legal disputes or claims arising out of or related to the Agreement … shall be submitted to
     binding arbitration … You and the Company agree that any claim, action or proceeding … must be
28   brought in your individual capacity, and not as a plaintiff or class member in any purported class,
     collective, or representative proceeding."  (Schaefer Decl., ¶ 4, Exh. B.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO        3.        Case No. 4:15-cv-01284-JSW
STAY PROCEEDINGS IN THE ALTERNATIVE

such as a piece of furniture, are offered to couriers with vehicles, as opposed to those who elect to use bicycles. (*Id.* at ¶ 8.)

The couriers determine the routes they take in traveling between pick-up and drop-off locations, and they are free to use whatever means of transportation they desire (i.e., Postmates does not require couriers to use any particular type of vehicle, or any particular brand, make, or size). (*Id.* at ¶ 9.) Further, Postmates places no restrictions on the couriers' use of other online platforms – whether they be direct competitors such as Caviar or Instacart, or indirect competitors such as Uber and Lyft. (*Id.* at ¶ 10; Declaration of Mel M.C. Cole in Support of Defendant's Opposition to Plaintiffs' Motion for 29 U.S.C. § 216(b) Notice, and Request to Stay Proceedings in the Alternative ("Cole Decl."), ¶ 3, Exh. 1, Declaration of Michael Gomez ("Gomez Decl."), ¶ 14.)

Couriers receive a percentage of the fee for each delivery (the rest is paid to Postmates for facilitating the delivery) and 100% of any tips provided by customers. At the end of the year, couriers are issued a Form 1099 for their earnings from the deliveries completed using the app. (*Id.* at ¶ 11.) Postmates does not evaluate couriers' performance, but customers are allowed to rate couriers on a scale between 1 and 5 for each delivery completed. Couriers are never automatically deactivated from the app due to their customer rating. (*Id.* at ¶ 12.)

The Postmates app is available to customers in almost 80 markets in 18 states across the United States. Notably, not each of these markets functions identically to the others. For example, in only a few markets, such as in New York and San Francisco, can a "foot courier" use the app. Similarly, only certain markets provide for bicycle couriers, because of variation in distances and terrain. Further, some markets have "zones" within the markets, where the customer is charged an extra fee when asking for a delivery across zones – as with all fees, that fee is also split between Postmates and the courier making the delivery. Markets also vary considerably as to saturation – with number of deliveries requested by consumers per capita varying dramatically. Lastly, trends in tipping also vary across markets. (*Id.* at ¶ 13.)

### B.    Data Generated Through The App

Over the last three years, approximately 37,710 couriers have completed delivery services using the Postmates app. (Schaefer Decl., ¶ 14.) Data generated through the app demonstrates that a

1    significant portion of this group (approximately 87%) has never logged on to the app in excess of 40

2    hours in any given week, making it impossible for those individuals to have *ever* worked overtime,

3    as logging on is a prerequisite to actually performing delivery services.   Further, in 2015,

4    approximately 98% of couriers who have used the app have never actively been "on delivery" in

5    excess of 40 hours in any given week.  In addition, the Company's records show that couriers have

6    been paid an average of approximately $9.23 per hour while logged on to the app, well in excess of

7    federal minimum wage.  Moreover, in 2015, approximately 95% of the couriers who have used the

8    app have not worked a single week in which their overall income for the week fell below an average

9    of $7.25 per hour with respect to time spent "on delivery."[2]  (Schaefer Decl., ¶¶ 15, 16, 17.)

10       As of on or around July 7, 2015 (when data specifically pertaining to Plaintiffs and Plaintiffs'

11    declarants was extracted), Plaintiff Michael Tsapatsaris had never logged on to the app in excess of

12    40 hours in any week, and of all eight named plaintiffs, only Plaintiff Ryder Vanderheyden had ever

13    actively been "on delivery" in excess of 40 hours in any given week.  Similarly, as of this same date,

14    three of Plaintiffs' declarants (Tina Van Merkesteyn, Trevor Twist, and Nathan Blake) had never

15    logged on to the app in excess of 40 hours in any given week, and *none* of the declarants had ever

16    actively been "on delivery" in excess of 40 hours in any given week.[3]  (Schaefer Decl., ¶ 18.)

17 **III.**     **CONDITIONAL CERTIFICATION IS INAPPROPRIATE**

18      **A.**     **Applicable Legal Standard: Conditional Certification**

19       In *Hoffman-LaRoche*, the United States Supreme Court held that district courts "have

20    *discretion*, *in appropriate cases* … to implement" the collective action mechanism under Section

21    216(b) "by facilitating notice to potential plaintiffs."  *Hoffman-LaRoche Inc. v. Sperling,* 493 U.S.

22    165, 169 (1989) (emphasis supplied); *see also Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d

23    1231, 1233 (M.D. Ala. 2003) ("The power to authorize notice must, however, be exercised with

24    discretion and only in appropriate cases.").

25       In this case, Plaintiffs seemingly interpret the "lenient" nature of the "initial stage" of FLSA

26

27    [2] Because of the volume of this data (in excess of 300 pages), Postmates has not filed it with this Opposition.  However, the data is available to the Court upon request and will be sent to Plaintiffs' counsel.

28    [3] *Cf.* Twist Decl., ¶ 6; Van Merkesteyn Decl., ¶ 6; Vrarati Decl., ¶ 5.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE      5.     Case No. 4:15-cv-01284-JSW

litigation to mean they need only **ask** for conditional certification without presenting any viable theory or supporting evidence that a collective action is appropriate.  Courts have recognized that "conditional certification at the first stage is by no means automatic," and "lenient" does not mean the absence of any standard.  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, *9-10 (S.D. Cal. 2008); *Clausman v. Nortel Networks, Inc.*, 2003 U.S. Dist. LEXIS 11501, *8 (S.D. Ind. 2003).

Under Section 216(b), individuals may bring a FLSA action in a representative capacity only for "other employees similarly situated."  29 U.S.C. § 216(b).  Neither the FLSA nor the Ninth Circuit has defined "similarly situated."  *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007).  Plaintiffs refer to a two-step approach involving initial notice to prospective plaintiffs, followed by a subsequent evaluation whether such plaintiffs are similarly situated.[4]

Under any standard (even a lenient one), the Court must find that, based on Plaintiffs' proposed theory of liability, notice is "appropriate."  *Hoffman-LaRoche,* 493 U.S. at 169.  The collective action mechanism is appropriate only if it will result in the systemic benefits derived from a process that permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity."  *Id.* at 170.  Absent a specific demonstration that the "similarly situated" standard is met, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."  *Horne*, 279 F. Supp. 2d at 1234; *see also Trinh*, 2008 U.S. Dist. LEXIS 33016 at *8 (to determine whether plaintiffs are "similarly situated" for FLSA conditional certification purposes, the court should consider "the extent to which members of the proposed action will rely on common evidence").

---

[4] Some federal courts have incorporated some of the stringent standards of Rule 23 of class actions to FLSA collective actions. *Buckland v. Maxim Healthcare Servs.*, 2012 U.S. Dist. LEXIS 122281 (C.D. Cal. Aug. 27, 2012) (denying certification/conditional certification in a hybrid Rule 23/FLSA collective action while finding significant overlap between the commonality requirement under Rule 23 and certification of an FLSA collective action); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. Wis. 2013) ("despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, see, e.g., *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.")

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE                6.                Case No. 4:15-cv-01284-JSW

**B.    Applicable Legal Standard: Independent Contractor Status**

Courts consider the following factors when determining whether an individual is an independent contractor under the FLSA:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business.

*See, e.g., Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1370 (9th Cir. 1981); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).  The presence (or absence) of any one factor is not dispositive on employee status; such a determination depends "upon the circumstances of the whole activity."  *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947).

Given the individualized, multi-factor independent contractor analysis, any challenge to independent contractor status necessarily involves a fact-intensive inquiry that does not lend itself to collective treatment.  As the court in *Pfaahler v. Consultants for Architects, Inc.*, 2000 U.S. Dist. LEXIS 1772, *2-3 (N.D. Ill. Feb. 8, 2000), aptly stated:

> In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship with [the defendant] . . . .  Where this is the case, certification of a collective action under the FLSA is inappropriate.[5]

**C.    Plaintiffs' Motion For Conditional Certification Fails Because Plaintiffs Have Not Demonstrated They Are Similarly Situated To Other Members Of The Proposed Collective With Respect To A Common, Unlawful Practice**

**1.    Plaintiffs' Reliance Upon The Mere Classification Of Couriers As Independent Contractors Is Insufficient To Establish A Common Theory Of Liability**

Courts have rejected the argument that the mere classification of workers as independent

---

[5] *See also, Demauro v. Limo, Inc.*, 2011 U.S. Dist. LEXIS 1229, *13 (M.D. Fla. Jan. 3, 2011) (determining whether such individual is an employee or an independent contractor is necessarily an individualized assessment that "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

7.

Case No. 4:15-cv-01284-JSW

1   contractors alone justifies certification of a collective action. *See, e.g., Pennington v. Integrity*

2   *Communs., LLC*, 2013 U.S. Dist. LEXIS 11565 (E.D. Mo. Jan. 29, 2013) (conditional class

3   certification denied where plaintiffs failed to support claim for misclassification of independent

4   contractors with sufficient evidence).[6]

5       In *Colson*, an exemption misclassification case, the court explained that "sound public policy

6   [considerations] and basic common sense" make clear that the mere classification of a group of

7   individuals as exempt cannot alone justify certification. The court held, in relevant part, as follows:

8           [T]he mere classification of a group of employees – even a large or
            nationwide group – as exempt under the FLSA is not by itself
9           sufficient to constitute the necessary evidence of a common policy,
            plan, or practice that renders all putative class members as "similarly
10          situated" for § 216(b) purposes. If it were, in every instance where an
            employer is accused of misclassifying a large group of employees, the
11          district court would then somehow be required to order collective
            action notification, irrespective of the quality or quantity of evidence
12          that had been produced in the form of declarations and supporting
            exhibits.
13

14  *Colson*, 687 F. Supp. 2d at 926 (citing *In re Wells Fargo*, 571 F.3d 953 (9th Cir. 2009) and *Vinole* v.

15  *Countrywide Home Loans*, 571 F.3d 935 (9th Cir. 2009)).

16      Accordingly, before even reaching the question of whether Plaintiffs are similarly situated to

17  those they seek to represent, Plaintiffs must first show a viable theory of independent contractor

18  misclassification – the entire basis upon which they premise their lawsuit. Plaintiffs have failed to

19  make such a showing.

20      Plaintiffs submit a total of nine boilerplate declarations in support of their motion. However,

21  the declarations do nothing to advance Plaintiffs' bid for conditional certification. Notably, the

22  declarations are devoid of competent evidence suggesting that Plaintiffs or any other putative class

23  members were actually misclassified.

24

25  [6] *See Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-669 (E.D. Pa. 2010); *Andel v.
    Patterson-UTI Drilling Co. LLC*, 280 F.R.D. 287, 294-295 (S.D. Tex. 2011); *see also, Trinh*, 2008
26  U.S. Dist. LEXIS 33016 at *9-11 (S.D. Cal. 2008) (denying conditional certification where
    plaintiffs' only allegation was that defendants uniformly classified plaintiffs and other loan officers
27  as "exempt" and plaintiffs offered no evidence beyond their own speculative beliefs that all loan
    officers, regardless of location or experience, were similarly situated); *Marsh v. Butler County
28  School System*, 242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003) ("the mere fact that violations [of the
    FLSA] occurred cannot be enough to establish similarity").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE          8.          Case No. 4:15-cv-01284-JSW

The declarations distill to the following assertions: (i) the declarants performed courier services; (ii) the declarants were classified as independent contractors; (iii) the declarants were responsible for their own business expenses; (iv) the declarants did not receive overtime pay and/or the minimum wage for every hour during which they performed the services; and (v) the declarants believe their "performance" was "monitored" by Postmates (with some declarants further *speculating* [inconsistent with Postmates' own evidence] that low ratings could result in "warnings" or "termination").

Significantly, Plaintiffs submit no evidence that they are similarly situated to other couriers with respect to *any factor* involved in the calculus undertaken to determine independent contractor status.

### a.        Couriers Bear The Hallmarks Of Independent Contractors

In stark contrast to Plaintiffs' "evidence," the declarations submitted by Postmates make clear that while their methods for using the app vary greatly (addressed further below), couriers unquestionably bear the hallmarks of bona fide independent contractors under the governing legal standard.

Indeed, as demonstrated by the evidence submitted by Postmates, the couriers – not Postmates – personally control, *inter alia*: **(i)** when and where to log on to the app; **(ii)** what deliveries to accept, reject, or ignore; **(iii)** what equipment and materials to use while performing services; **(iv)** what clothes they wear while providing services; **(v)** how to interact with customers and merchants; **(vi)** what routes to take in traveling to and from pick-up and drop-off locations; and **(vii)** whether or not to provide services for other companies.[7]

In addition, the couriers exhibit several other secondary indicia of independent contractor status.  For example, the couriers' managerial skill directly impacts their opportunity for profit and loss.  The declarants describe in detail the amount of strategy they employ as to when, where, and how to provide services in order to maximize their profits.  (Letzer Decl., ¶¶ 7, 8, 9, 15, 16; Sherrod

---

[7] See Schaefer Decl., ¶¶ 6, 7, 9, 10, 12; Gomez Decl., ¶¶ 8, 9, 14, 17; Cole Decl., ¶ 4, Exh. 2, Declaration of Aidan Letzer ("Letzer Decl."), ¶¶ 5, 13, 14, 16; Cole Decl., ¶ 5, Exh. 3, Declaration of Michael Plaza ("Plaza Decl."), ¶¶ 8, 11, 12, 14, 16, 17; Cole Decl., ¶ 6, Exh. 4, Declaration of Seretha Sherrod ("Sherrod Decl."), ¶¶ 13-17.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

9.

Case No. 4:15-cv-01284-JSW

1    Decl., ¶¶ 14-17; Plaza Decl., ¶¶ 9, 11-17.)  As Martin Gomez explains, "since I have complete

2    control over my hours, schedule, and where in LA I work, I can significantly affect my income by

3    being smart about how I provide services." (Gomez Decl., ¶ 8.)  This careful application of strategy

4    also shows the amount of skill required to do the job profitably, as many of the couriers rely on prior

5    experience to maximize their profitability.  (Letzer Decl., ¶ 10; Plaza Decl., ¶ 11; Gomez Decl., ¶ 4.)

6    Further, the couriers understood from the start that they were engaged as independent contractors,

7    not employees.  (Schaefer Decl., ¶ 4, Exh. A; Plaza Decl., ¶¶ 5, 20.)

8        Based on the declarations before the Court, Plaintiffs have not met their showing that, even if

9    they themselves were misclassified (which Postmates denies), they are "similarly situated" to other

10   individuals who are bona fide independent contractors.  Accordingly, Plaintiffs have failed to

11   identify a common theory of liability upon which conditional certification could be granted.

12        **2.**      **Plaintiffs Cannot Demonstrate They Are Similarly Situated To Members Of The Collective Because No Single Courier Operates In The Same Way**

13

14       Even if Plaintiffs had offered legitimate evidence suggesting they or their declarants were

15   personally misclassified, Plaintiffs still could not demonstrate that other members of the collective

16   are "similarly situated" because no single courier operates his or her business in the same way.[8]

17       First, couriers have varying levels of investment in their businesses.  Some have invested in

18   vehicles to complete the services (e.g., Sherrod Decl., ¶ 6; Letzer Decl., ¶ 14; Gomez Decl., ¶ 11),

19   while others simply use bicycles (e.g., Vanderheyden Decl., ¶ 2; Twist Decl., ¶ 2), and others even

20   complete deliveries on foot.  (Schaefer Decl., ¶¶ 8, 13; Blake Decl., ¶ 2; Grant Decl., ¶ 2.)

21       Further, while all couriers have the right to reject orders at their choosing, some do so much

22   more frequently than others.  For example, Aidan Letzer accepts almost every request received,

23   whereas Martin Gomez focuses on higher-end deliveries (Letzer Decl., ¶ 7; Gomez Decl., ¶ 12).

24

25   [8] Plaintiffs rely heavily upon the decision in *Flores v. Velocity Exp., Inc.*, 2013 WL 2468362 (N.D.

26   Cal. 2013) in support of their position that the couriers' classification as independent contractors necessarily renders them all sufficiently "similarly situated" for purposes of conditional certification.

27   However, Plaintiffs fail to recognize that the *Flores* court rejected plaintiffs' request to certify a nationwide class of all delivery drivers, instead limiting certification to those individuals who had

28   signed a ***single*** contract signed by the plaintiffs in that case, which ***comprehensively described*** the rights and obligations of the parties. *Flores*, at *1-*2, *6, *8, *10.

Similarly, although no couriers are required to use the app on a regular basis, and some only use the app to supplement their primary source(s) of income, others use the app far more regularly. Seretha Sherrod, for example, uses the app to supplement her primary source of business (e.g., product promotion as a Brand Ambassador). (Sherrod Decl., ¶ 3.) Martin Gomez, who has also registered to use the Uber and Lyft apps, uses the app to generate income to support his studies, whereas Michael Plaza sees the app as a way to work for himself. (Gomez Decl., ¶¶ 3, 14; Plaza ¶¶ 2-3.)

In addition, some couriers have developed a unique skillset based on years of experience in the courier and/or delivery industry, whereas other couriers have less sophisticated operations. Michael Plaza, for example, started his business off slowly, but actively sought out data from Postmates to evaluate how his statistics and income compared to that of other couriers, so that he could evaluate and modify (if necessary) his overall operations. (Plaza Decl., ¶ 6.) Martin Gomez, on the other hand, had completed over ten thousand deliveries before he ever started using the Postmates app, which provided him with a solid foundation from which to quickly build his business using the Postmates app. (Gomez Decl., ¶ 4.) In fact, Mr. Gomez has now developed a unique method for deliveries that has increased his income by 20-30%. (Gomez Decl., ¶ 17.) Seretha Sherrod brings her marketing and product management experience with her on every delivery, marketing herself as a courier with the same techniques she has perfected as a Brand Ambassador. (Sherrod Decl., ¶¶ 3, 7, 9.) Aidan Letzer invokes his prior experience explaining retirement plans to build networks that help him complete his deliveries more efficiently. (Letzer Decl., ¶ 11.)

Couriers also vary greatly as to how they choose to provide services. Michael Plaza will almost never accept Chipotle orders, whereas Seretha Sherrod has completed so many, they've become her most reliable deliveries. (Plaza Decl., ¶ 16; Sherrod Decl., ¶ 14.) Similarly, Michael Plaza prefers to work when there are fewer couriers active on the system (and thus more orders available for him to choose between), such as after midnight and breakfast time, whereas Martin Gomez purposely avoids working late at night. (Plaza Decl., ¶ 13; Gomez Decl., ¶ 3.)

In light of the multi-factor, individualized test that must be applied to determine independent contractor status, this level of factual variance precludes collective treatment. *See Spellman v. American Eagle Express, Inc.*, 2013 U.S. Dist. LEXIS 35032, *11-*19 (E.D. Penn. 2013) (case

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

11.

Case No. 4:15-cv-01284-JSW

1  unsuitable for collective treatment where record showed that the class members – a group of delivery

2  drivers – were particularly dissimilar with respect to individual circumstances).[9]

3      **3.    Plaintiffs' Claims Necessarily Require Individualized Determinations,
        Rendering Conditional Certification Inappropriate**

4

5      Because collective actions are meant to provide for the efficient resolution of common issues

6  of law and fact arising from the same alleged activity (*Hoffman-LaRoche*, 493 U.S. at 170), the

7  manageability of Plaintiffs' proposed collective must be considered before the Court invites tens of

8  thousands of individuals to join the case.  *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264,

9  266 (D. Minn. 1991) ("as a matter of sound case management, a court should, before [authorizing

10  notice] make a preliminary inquiry as to whether a manageable class exists."); *Bouthner v. Cleveland

11  Constr., Inc.*, 2012 U.S. Dist. LEXIS 28497, *16-17 (D. Md. Mar. 5, 2012) (a court should make "a

12  preliminary inquiry as to whether a manageable class exists" at the conditional certification stage).

13      Courts routinely deny conditional certification where, like here, individualized inquiries

14  abound.  *See, e.g., England v. New Century Fin. Corp.*, 370 F. Supp.2d 504 (M.D.La. 2005) ("If

15  liability is found, damages would necessarily require a case-by-case inquiry, thereby rendering it

16  impossible to try this case as a collective class."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D.

17  Or. 2002) (denying certification where "each claim would require extensive consideration of

18  individualized issues of liability and damages" and "be mired in particularized determinations of

19  liability and damages, rather than collective consideration of common questions of law and fact.");

20  *Ray v. Motel 6 Operating, Ltd. P'ship*, 1996 WL 938231 (D.Minn. Mar. 18 1996), *4 ("[T]he court

21  must also look to specific factual similarities or differences and manageability concerns"); *Harrison

22  v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868, 870-71 (S.D. Ohio 2005) (noting defendant's "valid

23  concern" that "fact-intensive, individualized inquiry" necessary to resolve matter was "not amenable

24

25

26  ---
[9] *Cf: Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 303 (E.D. Pa. 2010) ("If the present case

27  were tried collectively and a verdict were reached for defendant, this result would be unfair to those
    plaintiffs who may have been denied pay owed . . . similarly, if a verdict were reached for plaintiffs,

28  this would be unfair to defendant[s], who would be deemed liable as to the entire collective-action
    class when it may not have undercompensated all individual members of that class.").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE        12.        Case No. 4:15-cv-01284-JSW

1    to a collective action.")[10]

2        In this case, as currently pled, in light of (i) the individualized nature of the independent

3    contractor analysis; and (ii) the fact that there is no way to determine, without making individualized

4    inquiries, how each and every putative class member spends his or her time while logged on to the

5    app, the *Singer* action cannot be adjudicated on a collective basis.

6        As discussed, the process for determining independent contractor status is inherently

7    individualized. *See, e.g., Pfaahler*, 2000 U.S. Dist. LEXIS 1772 at *2-3; *Demauro*, 2011 U.S. Dist.

8    LEXIS 1229 at *13. The varying nature of the couriers' operations (discussed above) only adds

9    further complexity to this analysis. *See, e.g., Spellman*, 2013 U.S. Dist. LEXIS 35032 at *11-*19.

10       Even assuming that the couriers were misclassified as independent contractors, however, the

11   *Singer* action would still present this Court with insurmountable manageability issues. Indeed,

12   neither Plaintiffs nor Postmates has any way to determine what the couriers do, or how they spend

13   their time, while logged on to the app. While Plaintiffs likely assume all couriers are actively

14   working at all times while logged on, Postmates does not impose *any* requirements that couriers be

15   available to actually accept work when they are logged on. The declarations submitted by Postmates

16   make clear that this is the case.

17       Martin Gomez describes the time he spends while logged on this way: "Postmates does not

18   require me to do anything once logged in… that's my time. I run errands, talk on the phone, get

19   food for myself… I don't even have to accept jobs when I'm logged in. I can just ignore them all."

20   (Gomez Decl., ¶ 15.) Seretha Sherrod, sees it similarly, and will log on "even when [she is] not

21   ready to start making deliveries… [and] will reject[s] or ignore[s] deliveries while [she's] logged on

22   because [she's] not ready to hop in the car." (Sherrod Decl., ¶ 21.)

23       Aidan Letzer, on the other hand, likes to stay close to his phone and accept the first request

24   that comes in after logging-on. (Letzer, ¶ 15.) For Michael Plaza, "it never takes long for a delivery

25

26   ---
     [10] *See also, Gillian v. Starjem Rest. Corp.*, 2011 U.S. Dist. LEXIS 115833 (S.D.N.Y. Oct. 4, 2011)
27   (denying conditional certification because determination of whether the defendant's "alleged rules
     violated the minimum wage and overtime provisions of the FLSA depends on the number of hours
28   each individual worked on a particular shift, as well as the number of hours each individual worked
     in a particular week.").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1   request to come through," and he usually gets them "right away," but will sometimes run personal

2   errands while logged on, even while actively completing deliveries.  (Plaza ¶¶ 9-10.)

3        Thus, even assuming the existence of an employment relationship, without individualized

4   inquiries regarding how *each* courier spent his or her time while logged on to the app on a *day-by-*

5   *day*, and *week-by-week* basis, it will be impossible to determine whether the couriers are entitled to

6   any additional compensation under the FLSA.  In other words, without asking each courier about his

7   or her daily and weekly activities, there is no way to determine whether couriers *worked* in excess of

8   40 hours per week in any given week, or whether their income for time *worked* fell below the

9   minimum wage.  This type of individualized analysis forecloses collective treatment.

10       Moreover, if any collective is certified, prior to completing independent contractor status

11   and/or exposure analyses, this Court will need to determine which members have validly:

12   (i) delegated resolution of any dispute they might have to an arbitrator; and (ii) waived their right to

13   participate in a class or collective action as described in the Terms & Conditions, both of which

14   determinations will necessarily entail a case-by-case analysis and application of the appropriate legal

15   standard(s).  (Schaefer Decl., ¶ 4, Exh.B.)

16           **4.      Even Assuming The Couriers Were Misclassified, Plaintiffs Have Failed
                       To Propose A Sufficiently Plausible Common Theory Of Liability**
17

18       Putting aside the above evidence, and further assuming that Plaintiffs could articulate a

19   common method by which to prove employment status (which Plaintiffs have not done), there is

20   more that Plaintiffs must establish to earn conditional certification.  Specifically, Plaintiffs must

21   make a *prima facie* showing that members of the collective share an injury for which compensation

22   is owed.  This they cannot do.

23       As discussed above, data generated through the app demonstrates that approximately 87% of

24   the couriers have never logged on to the app in excess of 40 hours in any given week, and the

25   couriers have earned an average of $9.23 per hour while logged on.  (Schaefer Decl., ¶¶ 15, 17.)  The

26   couriers' "on delivery" (i.e., the time a courier spends actively picking-up and delivering the

27   requested items) data is even more striking:  in 2015, approximately 98% of couriers who have used

28   the app have never actively been "on delivery" in excess of 40 hours in any given week, and

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

14.

Case No. 4:15-cv-01284-JSW

1   approximately 95% of the couriers who have used the app have not worked a single week in which

2   their overall income for the week fell below an average of $7.25 per hour.

3          Accordingly, even assuming the couriers were misclassified, Plaintiffs have failed to

4   demonstrate that members of the proposed collective were "subject to a single decision, policy, or

5   plan that _violated the law._"    (Mtn. 1:16-17) (emphasis supplied.)    *See generally, Sotelo v.*

6   *MediaNews Group*, 207 Cal. App. 4th 639, 654, 652 (2012) (recognizing, in an independent

7   contractor class action under California law, that "simply having the status of an employee does not

8   make the employer liable to a claim for overtime compensation."   Such misclassification, even if

9   true, is "only part of the equation… Plaintiffs must prove that putative class members in fact worked

10  sufficient days and/or hours [for plaintiffs] to be entitled to overtime.").

11         Plaintiffs' theory of liability is based on the assumption that couriers worked in excess of 40

12  hours per week and did not receive the federal minimum wage for all hours worked.   However, the

13  data makes clear that Postmates has no conceivable overtime or minimum wage liability for a

14  substantial portion of the putative collective.   Thus, even assuming that the couriers were

15  misclassified, Plaintiffs have failed to propose a sufficiently plausible common theory of liability.

16  Conditional certification should be denied on this basis alone.[11]

17         **D.    Plaintiffs' Request For Production Must Be Denied**

18         The Court has broad discretionary powers under Federal Rule 26(c) "to fashion discovery in

19  a manner that is suitable to the action before it."   *Id.*   Here, Plaintiffs have failed to establish the

20  existence of "similarly situated" employees with respect to their claims.   Thus, their request for

---

[11] *See e.g., Harrison, supra,* (recognizing that "[i]n order to establish that other employees are similarly situated, Plaintiff must show that, like her, they were not paid all of the wages to which they were entitled," and finding that averments from two (2) employees of FLSA violations, out of a potential class of 300, were insufficient to allow certification); *Thompson v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816, *10 (D. Minn., Jan. 20, 2009) (evidence that "tiny fraction of the 8,000 members of the putative class may not have received some of the compensation that they were due" did not justify conditional certification); *West v. Border Foods, Inc.*, 2006 WL 1892527 (D. Minn., July 10, 2006) (denying certification where plaintiffs submitted evidence of alleged off-the-clock work for only 2.5% of the class); *Marsh*, 242 F. Supp. 2d at 1094 (rejecting the proposition that it is "enough to demonstrate that employees are similarly situated simply to say that they claim violations of the law by the same employer" as that would lead to a situation in which "any time an employer had two or more employees who allegedly were not being paid the overtime they claimed they were due, the employees would be similarly situated and be allowed to proceed with a collective action.").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

15.

Case No. 4:15-cv-01284-JSW

couriers' "names, last-known mailing addresses, last-known telephone numbers, e-mail addresses, work locations, and dates of employment" must be denied. *See Brooks v. BellSouth Telecomms. Inc.*, 164 F.R.D. 561, 571 (N.D. Ala. 1995) (declining to compel production of personnel data where certification denied); *Mackenzie v. Kindred Hosps. E.*, 276 F. Supp. 2d 1211, 1221 (M.D. Fl. 2003).

Further, regardless of whether the Court conditionally certifies the collective, the Court should deny, or at the very least limit, Plaintiffs' overly broad and unduly burdensome request. *See, e.g., Daniels v. Aeropostale West, Inc.*, 2013 U.S. Dist. LEXIS 59514, *10 (N.D. Cal., April 24, 2013) ("Employee email addresses and telephone numbers are unnecessary for first-class mail delivery."); *Delgado v. Ortho-McNeil, Inc.*, 2007 U.S. Dist. LEXIS 74731, *13-14 (C.D. Cal., Aug. 6, 2007) ("the Court agrees with Defendants that production of telephone numbers, email addresses, and social security numbers is inappropriate"); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842 at *5 (N.D. Tex. Oct. 7, 2004) (finding that the "need for compelled disclosure of ['highly personal information about persons who may in fact have no interest in this litigation'] was outweighed by the privacy interests of potential class members") (quoting *Humphries v. Stream Int'l*, No. 3:03-CV-1682-D (N.D. Tex. Feb. 13, 2004).

### E.   Plaintiffs' Proposed Notice Procedures Are Inappropriate

(i) Postmates should not be required to post the Notice on its website, which would be unnecessarily disruptive, confusing to customers, and potentially prejudicial to Postmates' business interests.  Moreover, it is well-established that mailing the notice to prospective class members via first-class U.S. Mail is sufficient notice.  For these same reasons, Plaintiffs' request to send the notice via e-mail is also inappropriate.[12]

(ii) The ninety-day opt-in period proposed by Plaintiffs is also unnecessary and would

---

[12] *See Russell v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 78771, at *14 (N.D. Cal. Sept. 3, 2008) (denying request to post notice because "providing notice by first class mail will be sufficient to assure that potential collective action members receive actual notice of this case."); *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007) ("First class mail is ordinarily sufficient to notify class members who have been identified."); *Barnett v. Countrywide Credit Indus.*, No. CIV.A. 3:01-CV-1182-M, 2002 WL 1023161, at *2 (N.D. Tex. May 21, 2002) ("[M]ailing the notice to the potential class members, rather than also posting them at Defendant's offices, is sufficient to provide the potential opt-in plaintiffs with notice of the suit.").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

16.

Case No. 4:15-cv-01284-JSW

1    needlessly delay the litigation.[13]

2        (iii) The reminder notice proposed by Plaintiffs is inappropriate, and could be "interpreted as

3    encouragement by the court to join the lawsuit" and should therefore be rejected.[14]

4        **F.    Plaintiffs' Proposed Notice And Consent Form Should Be Rejected**

5        (i) Plaintiffs' proposed notice and consent form improperly suggest (in several different

6    paragraphs) that couriers worked "*for* Postmates."  Language discussing the relationship between

7    couriers and Postmates should be neutral (e.g., "According to the company's records, you may be

8    eligible to participate in this case because you have *performed courier services using the Postmates*

9    *app* at some point during the last three years.").

10        (ii) The disclaimer included in the fourth full paragraph of the proposed notice (i.e.,

11    "[Postmates] contends that couriers … need not be paid overtime compensation or minimum wage

12    under the FLSA.") is unnecessarily argumentative.   The disclaimer should read as follows:

13    "Postmates denies that it has violated the FLSA, and denies that Plaintiffs or any other couriers they

14    seek to represent were denied any compensation legally owed.  Postmates maintains that all couriers

15    are properly classified as independent contractors."

16        (iii) The language included in the seventh full paragraph of the proposed notice regarding the

17    potential opt-in plaintiffs' participation is also defective, as it suggests that all couriers were

18    Postmates' *employees*, and fails to specify that opt-ins may be legally obligated to sit for deposition

19    or testify at trial.  ("You may also be *asked* to be a witness or to provide evidence in the case,

20    although not all *employees* who submit a consent form will be required to do so.")

21        (iv) Plaintiff's proposed notice does not include language informing putative class members

22    that they may be liable for Defendant's attorneys' fees and costs, if they join and do not prevail.

23

24    [13] *See Beetler v. Trans-Foam, Inc*., 2011 WL 6130805, at *5 (N.D. Ohio Dec. 8, 2011) ("[T]he Court finds that a forty-five day opt-in period, rather than the proposed ninety-day period, satisfies the need to prevent delay in this litigation while also allowing potential plaintiffs time to fully consider

25    their options."); *Luque v. AT&T Corp*, 2010 U.S. Dist. LEXIS 126545, *20 (N.D. Cal., Nov. 19, 2010) (Breyer, J.) (60-day opt-in period); *Delgado*, 2007 U.S. Dist. LEXIS 74731, *11 (rejecting

26    request for 120-day opt-in period, finding that "[s]ixty day is sufficient time.").

27    [14] *See, e.g., Robinson v. Ryla Teleservices, Inc.*, 2011 WL 6667338, at *5 (S.D. Ala. Dec. 21, 2011); *Sharpe v. APAC Customer Servs.,* No. 09-cv-329, 2010 WL 1292154, at *2 (W.D. Wis. Mar. 29,

28    2010); *cf. Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) (authorizing one written notice and "strictly prohibit[ing]" any other communication with class members).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

17.

Case No. 4:15-cv-01284-JSW

1    Courts have often instructed that notices include such language.[15]

2       (v) Given the arbitration provision addressed above, the discussion in the fifth full paragraph

3    of the proposed notice regarding Postmates' recognition of the couriers' "right to pursue their claims

4    in court" should be revised to provide as follows:  "Postmates disputes the merits of this case, and

5    further disputes that all couriers have the right to pursue these claims in court due to the arbitration

6    provision and class and collective action waiver contained in Postmates' 'Terms & Conditions.'"

7       **G.    If The Court Is Otherwise Inclined To Grant Plaintiffs' Motion, All Proceedings
8            Should Be Stayed Pending The Supreme Court's Decision In *Bouaphakeo***

9           **1.    Legal Standard**

10      "[T]he power to stay proceedings is incidental to the power inherent in every court to control

11   the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and

12   for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  When considering a motion to stay,

13   the court weighs the competing interests that will be affected by the grant or refusal of stay,

14   including: (1) the possible damage which may result from granting the stay; (2) the hardship or

15   inequity which a party may suffer in being required to go forward; and (3) the orderly course of

16   justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

17   that could be expected to result from a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

18      Courts routinely grant motions to stay where the Supreme Court has granted *certiorari* or is

19   considering a grant of *certiorari* in cases that will bear upon the cases before them.  *See, e.g.*, *Garcia*

20   *v. United States*, No. 09 Civ. 9278 (GEL), 2009 U.S. Dist. LEXIS 118836, at *1-2 (S.D.N.Y. Dec.

21   21, 2009); *Clark v. United States*, 624 F.3d 3, 4 (2d Cir. 1980); *Wisconsin Bell Inc. v. TCG*

22   *Milwaukee, Inc.*, 301 F. Supp. 2d 893, 894 (W.D. Wisc. 2002).

23           **2.    The *Bouaphakeo* Decision**

24      On June 8, 2015, the United States Supreme Court granted certiorari review in *Bouaphakeo*

25   *v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 2015 WL 1285369 (June 8, 2015)

26

27   _____

[15] *See, e.g.*, *Daniels v. Aeropostale W., Inc.*, 2013 U.S. Dist. LEXIS 59514, at *11-12 (N.D. Cal.
28   Apr. 24, 2013); *Barrera v. US Airways Group, Inc.*, 2013 U.S. Dist. LEXIS 124624, at *27 (D. Ariz.
     Aug. 30, 2013).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO          18.          Case No. 4:15-cv-01284-JSW
STAY PROCEEDINGS IN THE ALTERNATIVE

(No. 14-1146) ("*Bouaphakeo*").  The questions presented to the Supreme Court are as follows:

> I. Whether differences among individual class members may be ignored and a class action certified under Federal Rule of Civil Procedure 23(b)(3), or a collective action certified under the Fair Labor Standards Act, where liability and damages will be determined with statistical techniques that presume all class members are identical to the average observed in a sample.

> II. Whether a class action may be certified or maintained under Rule 23(b)(3), or a collective action certified or maintained under the Fair Labor Standards Act, when the class contains hundreds of members who were not injured and have no legal right to any damages.

In *Bouaphakeo*, the petitioner argues (i) the court erred in permitting class adjudication where numerous class members had suffered no injury and (ii) that there is no method to determine damages on a class-wide basis, and that statistical evidence is not reliable.  (Request for Judicial Notice ("RJN"), Petition for Writ of Certiorari, Exh. A at 2-4.)  The record in *Bouaphakeo* demonstrates substantial variance in the amount of time employees spent in donning/doffing activities.  (RJN, Exh. A at 16.)  Based on this, petitioner argues that calculating its liability for damages is not capable of class-wide resolution and could not be resolved "in one stroke" because the amount of damages depends on the personal circumstances of individual class members.  (*Id.* at 16, 18.)  Specifically, petitioner asserts there is a split among Circuit Courts regarding whether a class may be certified where plaintiffs seek an aggregate damages award for the class by extrapolating from an "average" class member.  (RJN, Exh. A. at 3.)  Petitioner also asserts that the inclusion of uninjured parties in the class violated its due process rights. (RJN, Exh. A. at 32.)

### 3.    A Stay Is Warranted Here

Data generated through the Postmates app makes clear that similar to the putative class in *Bouaphakeo*, the collective proposed here necessarily contains hundreds of individuals who have suffered no injury under the FLSA, and thus have no legal right to damages.  Because the decision in *Bouaphakeo* will provide guidance regarding whether Plaintiffs may even proceed with the FLSA collective that has been proposed, a stay will spare both parties from engaging in discovery, motion practice, and notice procedures that the *Bouaphakeo* decision may ultimately render moot.  Further, a stay will not damage or prejudice either party.  To ensure that potential opt-in plaintiffs are not prejudiced in any way, Postmates will not oppose a request to toll the statute of limitations period on

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR 29 U.S.C. § 216(b) NOTICE AND REQUEST TO STAY PROCEEDINGS IN THE ALTERNATIVE    19.    Case No. 4:15-cv-01284-JSW

their claims pending the Supreme Court's decision. Granting a stay in this case is also appropriate because critical legal issues are pending in a higher court. Stays are routinely imposed under such circumstances, such as when various courts stayed cases involving meal and rest period claims pending the decision in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).[16]

### 4.    Several Courts Have Granted Stays Pending the *Bouaphakeo* Decision

Several courts have already recognized the potential impact of the further guidance by the Supreme Court in *Bouaphakeo*, and have granted motions to stay based on its anticipated impact.

For instance, in *Perrin v. Papa John's*, 2015 U.S. Dist. LEXIS 79543, * 15 (E.D. Mo. June 19, 2015), the U.S. District Court for the Eastern District of Missouri agreed to stay a collective and class action "given the significant impact the Supreme Court's decision in *Bouaphakeo* is likely to have in this case." (*Id.*) In granting the stay, the court noted "the potentially dispositive impact of *Bouaphakeo* on the class certification issues in this case, combined with the efficiency of waiting for the Supreme Court's ruling, weighs heavily in favor of granting the stay." *Id.*; *see also Pelz v. Abercrombie and Fitch Inc.*, Case No. 14-6327 (C.D. Cal. July 27, 2015) (Court approving stipulation to stay case) (RJN, Exh. B); *In Re Polyurethane Antitrust Litigation*, No. 1:10md2196 (N.D. Ohio Aug. 4, 2015) (same); *Larson v. Trans Union, LLC*, 2015 WL 3945052 (N.D. Cal. June 26, 2015) (granting motion to stay).

As the same factors that have counseled towards a stay in each of these cases are present here, the same result is warranted.

### IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' motion. Alternatively, if the Court is otherwise inclined to conditionally certify a class, Defendant requests that the Court stay all proceedings pending the Supreme Court's decision in *Bouaphakeo*.

---

[16] *See, e.g.*, *Gong-Chun v. Aetna, Inc.*, 2010 U.S. Dist. LEXIS 56938, at *5 (E.D. Cal. May 17, 2010); *Minor v. FedEx*, 2009 U.S. Dist. LEXIS 62884 at *5 (N.D. Cal. July 6, 2009); *Lew v. Countrywide Financial Corp.*, 2009 U.S. Dist. LEXIS 56191 at *10 (N.D. Cal. Feb. 24, 2009); *Ortega v. J.B. Hunt Transp. Inc.*, 258 F.R.D. 361, 371 (C.D. Cal. 2009); *Thomas v. Avis Budget Group LLC*, 2009 U.S. Dist. LEXIS 83442, at *2 (C.D. Cal. Aug. 26, 2009); *Bibo v. Fed. Express, Inc.*, 2009 U.S. Dist. LEXIS 37597, at *40 (N.D. Cal. Apr. 21, 2009).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

20.

Case No. 4:15-cv-01284-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 19, 2015

Firmwide:135291266.5 078219.1003

/s/ Andrew M. Spurchise
ANDREW M. SPURCHISE
LITTLER MENDELSON, P.C.
Attorneys for Defendant POSTMATES, INC.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MPA IN OPPOSITION TO PLTFS' MOTION FOR
29 U.S.C. § 216(b) NOTICE AND REQUEST TO
STAY PROCEEDINGS IN THE ALTERNATIVE

21.

Case No. 4:15-cv-01284-JSW